BENJAMIN B. WAGNER
United States Attorney
COLLEEN M. KENNEDY
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, California 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>SOPER-WHEELER COMPANY, LLC<br>Defendant. | CASE NO.<br>**COMPLAINT**<br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. This is a complaint for damages arising out of a forest fire that ignited on September 19, 2009, in the Plumas National Forest in Plumas County, California. The fire burned approximately 307 acres of National Forest System lands. The fire, which became known as the Silver Fire, started when Defendant's employees struck rock with a chainsaw while operating in the National Forest. Defendant is liable for, among other things, strict liability for igniting the Silver Sire and for igniting the fire negligently or in violation of law.

## THE PARTIES

2. The United States, as sovereign, owns National Forest System lands, including the Plumas National Forest, that are under the supervision, control, administration and protection of the United States Department of Agriculture, Forest Service ("Forest Service"), an agency of the United States.

3. Defendant Soper-Wheeler Company, LLC ("Soper-Wheeler") is a timber company that conducts logging operations throughout Northern California. Soper-Wheeler is a Delaware limited liability company with its principal place of business in Strawberry Valley, California.

## JURISDICTION AND VENUE

4. The Court has original jurisdiction over this action under 28 U.S.C. § 1345.

5. Venue is proper in the United States District Court for the Eastern District of California under 28 U.S.C. § 1391(b), because the events or omissions giving rise to the United States' claims occurred in Plumas County, California, and the property damaged is located in Plumas County, California, which is within this district.

## GENERAL ALLEGATIONS

6. In support of its logging operations, Soper-Wheeler maintains a water delivery system, referred to as the "Silver Creek Flume," that runs through National Forest System lands along Silver Creek, southwest of the community of Spanish Ranch. On or about February 9, 2001, the Forest Service issued, and Soper-Wheeler accepted and signed, a Special Use Permit by which the Forest Service agreed to allow Soper-Wheeler to "use or occupy National Forest System lands," subject to the conditions set forth in the Special Use Permit, in order to maintain the Silver Creek Flume. A true and correct copy of the Special Use Permit is attached as Exhibit "A" hereto and incorporated herein by this reference.

7. The Special Use Permit and its terms and conditions were and are authorized by federal law, including 43 U.S.C. §§ 1761 and 1765, and 36 C.F.R. §§ 251.53 and 251.56.

8. The Special Use Permit was effective through at least December 31, 2010, and at all times material to this action constituted a valid and enforceable agreement between the United States and Soper-Wheeler. At all times material to this action, Soper-Wheeler operated and maintained the Silver Creek Flume pursuant to the terms of the Special Use Permit.

9. Under paragraph III.A of the Special Use Permit, Soper-Wheeler is required to "comply with all applicable Federal, State, and local laws, regulations, and standards . . . as well as public health and safety laws and other laws relating to the siting, construction, operation, and maintenance of any facility, improvement, or equipment on the property."

10. Paragraph IV.C of the Special Use Permit states that Soper-Wheeler has an "affirmative duty to protect from damage the land, property, and interests of the United States."

11. Under the Special Use Permit, Soper-Wheeler is strictly liable to the United States for any damage to the lands or property of the United States caused in connection with Soper-Wheeler's operation or maintenance of the Silver Creek Flume. Paragraph IV.B of the Special Use Permit provides that Soper-Wheeler will indemnify the United States and states, in part:

> [Soper-Wheeler's] indemnification of the United States shall include any loss by . . . damage to property in connection with the occupancy or use of the property during the term of this permit. Indemnification shall include, but is not limited to, the value of the resources damaged or destroyed; the costs of restoration, cleanup, or other mitigation; fire suppression or other types of abatement costs; . . . and all administrative, interest, and other legal costs. This paragraph shall survive the termination or revocation of this authorization, regardless of cause.

12. On September 19, 2009, two Soper-Wheeler employees, John Taylor and Melvin Greene, conducted work on the Silver Creek Flume to remove sections of a large-diameter heavy steel pipe and to clear obstructions from the pipeline. Water moving through the Silver Creek Flume carries rocks and sediment that builds up and obstructs the flow of water. Taylor and Greene used various tools in the course of these repairs, including a shovel, a rock bar, and a chainsaw. Taylor and Greene used the chainsaw to cut sections of plastic pipe that were partially filled with rock and to cut a tree root that lay within the channel in an area surrounded by rocks and other obstructions. While operating the chainsaw, they repeatedly struck rocks in the work area, including rocks located within the plastic pipe they were cutting. Taylor and Greene also allowed some of the large-diameter heavy steel pipe they removed to slide down the rocky hill towards Silver Creek. Additionally, while working on the Silver Creek Flume, Greene ignited, smoked, and discarded at least four cigarettes.

13. The area where Taylor and Greene worked was located on a steep hillside and had limited access. There were no roads or trails in the immediate area. Taylor and Greene accessed the area by

driving on a private road owned by Soper-Wheeler, passing through a locked gate maintained by Soper-Wheeler, and hiking approximately one-quarter mile to the work site. Taylor and Greene did not see anyone in or around their work area during the entire time they were working at the site on September 19, 2009.

14. After completing their work, Taylor and Greene left the area by hiking back to Soper-Wheeler's private road and then traveled in their vehicle toward the community of Meadow Valley. Sometime after leaving the work site, they saw smoke, recognized that the smoke was originating from the work site they had just left, and traveled back toward the site. At or about the same time Taylor and Greene saw the smoke emanating from their work site, the fire was reported by Forest Service personnel at the Mount Hough Lookout and the Forest Service dispatched firefighters to the location. When Taylor and Greene arrived at the locked gate on Soper-Wheeler's private road, they opened the gate for the firefighters who were arriving to allow them access to the fire. Shortly thereafter, Taylor approached the Incident Commander at a staging area near the fire origin site, introduced himself, gave his phone number, and advised that "Someone is going to want to talk to me."

15. The fire, which would become known as the Silver Fire, ignited in the area where Taylor and Greene were working on the Silver Creek Flume. Investigators determined the fire's cause to be rock strikes from the chainsaw used by Taylor and Greene to cut plastic pipe. The only other possible causes the investigators identified were Greene's cigarette smoking and Taylor and Greene allowing large-diameter heavy steel pipe to strike rocks while sliding downhill. The investigators determined those causes to be less likely than rock strikes from Taylor's chainsaw.

16. The Forest Service employed substantial resources and incurred substantial costs in suppressing the Silver Fire, but the fire spread and ultimately burned approximately 307 acres of National Forest System lands.

17. The Silver Fire caused substantial damages to National Forest System lands, including the destruction of valuable timber and damage to watersheds and soil. The Forest Service has incurred, and will continue to incur, substantial costs for reforestation and fuels treatments.

18. The United States has made a demand on Soper-Wheeler for payment of some of the costs and damages incurred by the United States in connection with the Silver Fire, including suppression costs,

costs to undertake emergency rehabilitation efforts, and certain resource damages. Soper-Wheeler has not paid any part of the sum demanded by the United States.

**COUNT I**

**(Strict Liability Under the Special Use Permit)**

19. The United States incorporates the above allegations as if fully stated herein.

20. Pursuant to the Special Use Permit entered into between Soper-Wheeler and the United States allowing Soper-Wheeler to use or occupy National Forest System lands in order to maintain the Silver Creek Flume, Soper-Wheeler is strictly liable to the United States for all loss or damage incurred by the United States "in connection with [Soper-Wheeler's] occupancy or use of the property during the term of [the Special Use Permit]," including but not limited to suppression costs, damage to property, damage to resources, costs of restoration, administrative costs, and interest.

21. The Silver Fire was ignited by Soper-Wheeler employees during their work on the Silver Creek Flume. The Silver Fire and all resulting loss and damage to the United States therefore occurred in connection with Soper-Wheeler's occupancy or use of the property during the term of the Special Use Permit.

22. Soper-Wheeler's ignition of the Silver Fire was not authorized by the Special Use Permit, or any other applicable permit.

23. Under the terms of the Special Use Permit, Soper-Wheeler is liable to the United States for the United States' damages resulting from the Silver Fire, without limitation.

**COUNT II**

**(Breach of Special Use Permit)**

24. The United States incorporates the above allegations as if fully stated herein.

25. 36 C.F.R. § 261.10 prohibits the violation of any term or condition of a special-use authorization or contract.

26. Soper-Wheeler breached its obligations to the United States under the Special Use Permit. This breach included, but was not limited to, the following:

A. Soper-Wheeler failed to fulfill its duty to protect the land, property, and interests of the United States from damage, failed to take reasonable precautions to prevent and suppress fires, and failed to conduct its operations in a safe manner;

B. Soper-Wheeler failed to comply with all federal, state, and other laws, regulations, and standards, including California public health and safety laws; and

C. Soper-Wheeler failed to comply with its contractual duty to pay all damages to the United States occurring in connection with Soper-Wheeler's occupancy or use of the property.

27. As a result of these breaches by Soper-Wheeler, the United States has incurred damages in an amount to be established at trial.

**COUNT III**

**(Negligence and Violation of Law)**

28. The United States incorporates the above allegations as if fully stated herein.

29. Soper-Wheeler negligently, and in violation of law, ignited the Silver Fire or allowed it to be ignited on National Forest System Lands. As a result of those negligent and unlawful actions, the United States suffered damages in an amount to be proven at trial. Soper-Wheeler is liable for such damages under federal common law, both under general principles of negligence and borrowing from California liability statutes that are not aberrant or hostile to federal interests to supply the federal rule of decision, including California Health & Safety Code §§ 13007, 13009, and 13009.1.

30. At all times relevant to this action, Soper-Wheeler had a duty to exercise reasonable care in its operation and maintenance of the Silver Creek Flume, to maintain the area it used and occupied pursuant to the Special Use Permit in accordance with the terms of the Special Use Permit and applicable law, and in a safe manner and so as to prevent damage to the land and property of the United States.

31. Soper-Wheeler controlled the land in the areas surrounding the Silver Creek Flume and, as a possessor of land, had a duty to exercise reasonable care to ensure that its employees performed their work in a safe and reasonable manner.

32. Soper-Wheeler breached these duties by, among other things: igniting the Silver Fire or allowing it to ignite; failing to take reasonable precautions to prevent the ignition and spread of the fire; operating a chainsaw under conditions likely to start a fire; smoking and discarding cigarettes carelessly

and under conditions likely to start a fire; handling and discarding metal pipes at the work site under conditions likely to start a fire; failing to take reasonable precautions to prevent and suppress fires; failing to take reasonable steps to look for fire before leaving the work site; failing to control and extinguish the fire before leaving the work site and leaving the fire to burn unattended; failing to prevent damage to the land and property of the United States; failing to ensure the proper and safe maintenance, operation, use, and occupancy of National Forest System lands pursuant to the Special Use Permit; and failing to implement appropriate training, policies, and procedures to ensure such proper and safe maintenance, operation, use and occupancy.

33. The Silver Fire was ignited by a "device which may kindle a fire" within the meaning of California Public Resources Code § 4435, and the ignition of the Silver Fire is *prima facie* evidence of Soper-Wheeler's negligence in the maintenance, operation, or use of the device.

34. Soper-Wheeler violated multiple statutes and regulations, including, but not limited to: 36 C.F.R. §§ 261.5(a), (c), (d), (e), and 261.9(a); 18 U.S.C. § 1856; California Health & Safety Code §§ 13001 and 13002; and California Public Resources Code §§ 4421 and 4422. The violation of those laws creates a presumption of negligence.

35. The United States is further entitled to a presumption and inference of negligence under the doctrine of *res ipsa loquitur*, because (1) the ignition and spread of the Silver Fire was an incident of the kind that ordinarily does not occur in the absence of someone's negligence, (2) the Silver Fire was caused by an agency or instrumentality within the exclusive control of Soper-Wheeler, and (3) the United States did not cause or contribute to the ignition of the Silver Fire.

36. Soper-Wheeler's negligent acts, omissions, and violations of law caused the Silver Fire to ignite and were the proximate cause of substantial harm to the United States.

37. As a proximate result of Soper-Wheeler's negligence and violation of laws in causing the Silver Fire or allowing it to be ignited, the United States has suffered substantial damage, including, but not limited to, costs of fire suppression, lost commercial timber, costs of reforestation, damage to habitat, soil, and watersheds, and loss of irreplaceable environmental resources, in an amount to be proven at trial. Soper-Wheeler is responsible for all costs and damages caused by its negligence and the negligence of its agents and employees.

38. Soper-Wheeler's employees acted at all times within the course and scope of their employment, and Soper-Wheeler is liable for the acts and omissions of the employees in starting the fire.

**COUNT IV**

**(Trespass by Fire)**

39. The United States incorporates the above allegations as if fully stated herein.

40. Soper-Wheeler negligently and in violation of law ignited the Silver Fire and allowed it to spread on National Forest System lands within the Plumas National Forest.

41. This encroachment and invasion by fire onto the United States' property was done without the United States' consent.

42. As a proximate result of this trespass, the United States has suffered substantial damage, including, but not limited to, costs of fire suppression, lost timber, costs of reforestation, damage to habitat, soil, and watersheds, and loss of irreplaceable environmental resources, in an amount to be proven at trial.

**COUNT V**

**(Interest and Penalties)**

43. The United States restates the above allegations as if fully set forth herein.

44. The United States is entitled to recover interest and penalties under federal law, including without limitation under the Debt Collection Act, 31 U.S.C. § 3717, and federal common law borrowing from state law to supply the federal rule of decision.

**PRAYER FOR RELIEF**

WHEREFORE, the United States prays for judgment in its favor awarding the United States:

1. Damages fully and fairly compensating the United States for all damages sustained from the Silver Fire, including the costs of fire suppression, the costs of rehabilitation and restoration of the burned areas, loss of commercial timber, loss of environmental resources and uses, and loss of cultural resources;

2. Interest, including interest as authorized under 31 U.S.C. § 3717 and federal common law;

3. Investigation, collection, accounting, and administrative costs incurred as a result of the Silver Fire; and

4. Any other relief this Court deems appropriate.

Date: September 18, 2015

Respectfully submitted,

BENJAMIN B. WAGNER
United States Attorney

By *_/s/ Colleen M. Kennedy_*
COLLEEN M. KENNEDY
Assistant United States Attorney

# EXHIBIT A

Authorization ID 405101
Contact ID SOPER
Expiration Date: 12/31/2010

FS-2700-4 (8/99)
OMB 0596-0082

**U.S. DEPARTMENT OF AGRICULTURE**
**Forest Service**
**SPECIAL USE PERMIT**
**AUTHORITY:**
**FEDERAL LAND POLICY AND MGMT ACT, AS AMENDED October 21, 1976**

Soper Wheeler of 19855 BARTON HILL ROAD , STRAWBERRY VALLEY , CA 95981- (hereinafter called the Holder) is hereby authorized to use or occupy National Forest System lands, to use subject to the conditions set out below, on the Plumas National Forest of the National Forest System.

This permit covers 1.45acres, and/or 0 miles and is described as a) T26N, R9E, Section 4 and b) T24N, R8E, Seciton 15 and 16 as shown on the location map attached to and made a part of this permit, and is issued for the purpose of:

Use and maintenance two water delivery systems. a) The system located in T26N, R9E, Section 4 consists of 350 ft of a 10" spiral weld pipeline for water transmission to company installations. b) The system located in T24N, R8E, Sections 15 and 16 (Meadow Valley) consists of about 5,980 ft of 12" pipe.

The above described or defined area shall be referred to herein as the "permit area".

TERMS AND CONDITIONS

I. AUTHORITY AND GENERAL TERMS OF THE PERMIT

A. Authority. This permit is issued pursuant to the authorities enumerated at Title 36, Code of Federal Regulations, Section 251 Subpart B, as amended. This permit, and the activities or use authorized, shall be subject to the terms and conditions of the Secretary's regulations and any subsequent amendment to them.

B. Authorized Officer. The authorized officer is the Forest Supervisor or a delegated subordinate officer.

C. License. This permit is a license for the use of federally owned land and does not grant any permanent, possessory interest in real property, nor shall this permit constitute a contract for purposes of the Contract Disputes Act of 1978 (41 U.S.C. 611). Loss of the privileges granted by this permit by revocation, termination, or suspension is not compensable to the holder.

D. Amendment. This permit may be amended in whole or in part by the Forest Service when, at the discretion of the authorized officer, such action is deemed necessary or desirable to incorporate new terms, conditions, and stipulations as may be required by law, regulation, land management plans, or other management decisions.

E. Existing Rights. This permit is subject to all valid rights and claims of third parties. The United States is not liable to the holder for the exercise of any such right or claim.

F. Nonexclusive Use and Public Access. Unless expressly provided for in additional terms, use of the permit area is not exclusive. The Forest Service reserves the right to use or allow others to use any part of the permit area, including roads, for any purpose, provided, such use does not materially interfere with the holder's authorized use. A final determination of conflicting uses is reserved to the Forest Service.

G. Forest Service Right of Entry and Inspection. The Forest Service has the right of unrestricted access of the permitted area or facility to ensure compliance with laws, regulations, and ordinances and the terms and conditions of this permit.

H. Assignability. This permit is not assignable or transferable. If the holder through death, voluntary sale or transfer, enforcement of contract, foreclosure, or other valid legal proceeding ceases to be the owner of the improvements, this permit shall terminate.

I. Permit Limitations. Nothing in this permit allows or implies permission to build or maintain any structure or facility, or to conduct any activity unless specifically provided for in this permit. Any use not specifically identified in this permit must be approved by the authorized officer in the form of a new permit or permit amendment.

II. TENURE AND ISSUANCE OF A NEW PERMIT

A. Expiration at the End of the Authorized Period. This permit will expire at midnight on 12/31/2010. Expiration shall occur by operation of law and shall not require notice, any decision document, or any environmental analysis or other documentation.

B. Minimum Use or Occupancy of the Permit Area. Use or occupancy of the permit area shall be exercised at least 365 days each year, unless otherwise authorized in writing under additional terms of this permit.

C. Notification to Authorized Officer. If the holder desires issuance of a new permit after expiration, the holder shall notify the authorized officer in writing not less than six (6) months prior to the expiration date of this permit.

D. Conditions for Issuance of a New Permit. At the expiration or termination of an existing permit, a new permit may be issued to the holder of the previous permit or to a new holder subject to the following conditions:

1. The authorized use is compatible with the land use allocation in the Forest Land and Resource Management Plan.
2. The permit area is being used for the purposes previously authorized.
3. The permit area is being operated and maintained in accordance with the provisions of the permit.
4. The holder has shown previous good faith compliance with the terms and conditions of all prior or other existing permits, and has not engaged in any activity or transaction contrary to Federal contracts, permits, laws, or regulation.

E. Discretion of Forest Service. Notwithstanding any provisions of any prior or other permit, the authorized officer may prescribe new terms, conditions, and stipulations when a new permit is issued. The decision whether to issue a new permit to a holder or successor in interest is at the absolute discretion of the Forest Service.

F. Construction. Any construction authorized by this permit may commence by n/a and shall be completed by n/a. If construction is not completed within the prescribed time, this permit may be revoked or suspended.

III. RESPONSIBILITIES OF THE HOLDER

A. Compliance with Laws, Regulations, and other Legal Requirements. The holder shall comply with all applicable Federal, State, and local laws, regulations, and standards, including but not limited to, the Federal Water Pollution Control Act, 33 U.S.C. 1251 et seq., the Resource Conservation and Recovery Act, 42 U.S.C. 6901 et seq., the Comprehensive Environmental Response, Control, and Liability Act, 42 U.S. C. 9601 et seq., and other relevant environmental laws, as well as public health and safety laws and other laws relating to the siting, construction, operation, and maintenance of any facility, improvement, or equipment on the property.

B. Plans. Plans for development, layout, construction, reconstruction, or alteration of improvements on the permit area, as well as revisions of such plans, must be prepared by a qualified individual acceptable to the authorized officer and shall be approved in writing prior to commencement of work. The holder may be required to furnish as-built plans, maps, or surveys, or other similar information, upon completion of construction.

C. Maintenance. The holder shall maintain the improvements and permit area to standards of repair, orderliness, neatness, sanitation, and safety acceptable to the authorized officer and consistent with other provisions of this authorization. If requested, the holder shall comply with inspection requirements deemed appropriate by the authorized officer.

D. Hazard Analysis. The holder has a continuing responsibility to identify all hazardous conditions on the permit area which would affect the improvements, resources, or pose a risk of injury to individuals. Any non-emergency actions to abate such hazards shall be performed after consultation with the authorized officer. In emergency situations, the holder shall notify the authorized officer of its actions as soon as possible, but not more than 48 hours, after such actions have been taken.

E. Change of Address. The holder shall immediately notify the authorized officer of a change in address.

F. Change in Ownership. This permit is not assignable and terminates upon change of ownership of the improvements or control of the business entity. The holder shall immediately notify the authorized officer when a change in ownership or control of business entity is pending. Notification by the present holder and potential owner shall be executed using Form FS-2700-3, Special Use Application and Report, or Form FS-2700-3a, Request for Termination of and Application for Special-Use Permit. Upon receipt of the proper documentation, the authorized officer may issue a permit to the party who acquires ownership of, or a controlling interest in, the improvements or business entity.

IV. LIABILITY

For purposes of this section, "holder" includes the holder's heirs, assigns, agents, employees, and contractors.

A. The holder assumes all risk of loss to the authorized improvements.

B. The holder shall indemnify, defend, and hold the United States harmless for any violations incurred under any such laws and regulations or for judgments, claims, or demands assessed against the United States in connection with the holder's use or occupancy of the property. The holder's indemnification of the United States shall include any loss by personal injury, loss of life or damage to property in connection with the occupancy or use of the property during the term of this permit. Indemnification shall include, but is not limited to, the value of resources damaged or destroyed; the costs of restoration, cleanup, or other mitigation; fire suppression or other types of abatement costs; third party claims and judgments; and all administrative, interest, and other legal costs. This paragraph shall survive the termination or revocation of this authorization, regardless of cause.

C. The holder has an affirmative duty to protect from damage the land, property, and interests of the United States.

D. In the event of any breach of the conditions of this authorization by the holder, the authorized officer may, on reasonable notice, cure the breach for the account at the expense of the holder. If the Forest Service at any time pays any sum of money or does any act which will require payment of money, or incurs any expense, including reasonable attorney's fees, in instituting, prosecuting, and/or defending any action or proceeding to enforce the United States rights hereunder, the sum or sums so paid by the United States, with all interests, costs and damages shall, at the election of the Forest Service, be deemed to be additional fees hereunder and shall be due from the holder to the Forest Service on the first day of the month following such election.

E. With respect to roads, the holder shall be proportionally liable for damages to all roads and trails of the United States open to public use caused by the holder's use to the same extent as provided above, except that liability shall not include reasonable and ordinary wear and tear.

F. The Forest Service has no duty to inspect the permit area or to warn of hazards and, if the Forest Service does inspect the permit area, it shall incur no additional duty nor liability for identified or non-identified hazards. This covenant may be enforced by the United States in a court of competent jurisdiction.

V. TERMINATION, REVOCATION, AND SUSPENSION

A. General. For purposes of this permit, "termination", "revocation", and "suspension" refer to the cessation of uses and privileges under the permit.

"Termination" refers to the cessation of the permit under its own terms without the necessity for any decision or action by the authorized officer. Termination occurs automatically when, by the terms of the permit, a fixed or agreed upon condition, event, or time occurs. For example, the permit terminates at expiration. Terminations are not appealable.

"Revocation" refers to an action by the authorized officer to end the permit because of noncompliance with any of the prescribed terms, or for reasons in the public interest. Revocations are appealable.

"Suspension" refers to a revocation which is temporary and the privileges may be restored upon the occurrence of prescribed actions or conditions. Suspensions are appealable.

B. Revocation or Suspension. The Forest Service may suspend or revoke this permit in whole or part for:

1. Noncompliance with Federal, State, or local laws and regulations.
2. Noncompliance with the terms and conditions of this permit.
3. Reasons in the public interest.
4. Abandonment or other failure of the holder to otherwise exercise the privileges granted.

C. Opportunity to Take Corrective Action. Prior to revocation or suspension for cause pursuant to Section V (B), the authorized officer shall give the holder written notice of the grounds for each action and a reasonable time, not to exceed 90 days, to complete the corrective action prescribed by the authorized officer.

D. Removal of Improvements. Prior to abandonment of the improvements or within a reasonable time following revocation or termination of this authorization, the holder shall prepare, for approval by the authorized officer, an abandonment plan for the permit area. The abandonment plan shall address removal of improvements and restoration of the permit area and prescribed time frames for these actions. If the holder fails to remove the improvements or restore the site within the prescribed time period, they become the property of the United States and may be sold, destroyed or otherwise disposed of without any liability to the United States. However, the holder shall remain liable for all cost associated with their removal, including costs of sale and impoundment, cleanup, and restoration of the site.

VI. FEES

A. Termination for Nonpayment. This permit shall automatically terminate without the necessity of prior notice when land use rental fees are 90 calendar days from the due date in arrears.

B. The holder shall pay annually in advance a sum determined by the Forest Service to be the fair market value of the use granted by this authorization. The initial payment is set at $43.00 for the remainder of the calendar year. Subsequent payments shall be determined by the use of an annual fee schedule. The Forest Service may adjust the amount of payment annually by an appropriate indexing factor to reflect more nearly the fair market value of the use. At certain intervals the Forest Service shall review the fee and adjust the fee as necessary to assure that it is commensurate with the fair market value of the authorized rights and privileges, as determined by appraisal or other sound business management principles.

C. Payment Due Date. The payment due date shall be the close of business on January 1 of each calendar year payment is due. Payments due the United States for this use shall be deposited at USDA - FS, C/O Bank of America, File 71652, P.O. Box 60000, San Francisco, CA 94160-1652, in the form of a check, draft, or money order payable to "Forest Service, USDA." Payments shall be credited on the date received by the designated Forest Service collection officer or deposit location. If the due date for the fee or fee calculation statement falls on a non workday, the charges shall not apply until the close of business on the next workday.

D. Late Payment Interest, Administrative Costs and Penalties Pursuant to 31 U.S.C. 3717, et seq., interest shall be charged on any fee amount not paid within 30 days from the date the fee or fee calculation financial statement specified in this authorization becomes due. The rate of interest assessed shall be the higher of the rate of the current value of funds to the U.S. Treasury (i.e., Treasury tax and loan account rate), as prescribed and published by the Secretary of the Treasury in the Federal Register and the Treasury Fiscal Requirements Manual Bulletins annually or quarterly or at the Prompt Payment Act rate. Interest on the principal shall accrue from the date the fee or fee calculation financial statement is due.

In the event the account becomes delinquent, administrative costs to cover processing and handling of the delinquency will be assessed.

A penalty of 6 percent per annum shall be assessed on the total amount delinquent in excess of 90 days and shall accrue from the same date on which interest charges begin to accrue.

Payments will be credited on the date received by the designated collection officer or deposit location. If the due date for the fee or fee calculation statement falls on a non-workday, the charges shall not apply until the close of business on the next workday.

Disputed fees are due and payable by the due date. No appeal of fees will be considered by the Forest Service without full payment of the disputed amount. Adjustments, if necessary, will be made in accordance with settlement terms or the appeal decision.

If the fees become delinquent, the Forest Service will:

Liquidate any security or collateral provided by the authorization.

If no security or collateral is provided, the authorization will terminate and the holder will be responsible for delinquent fees as well as any other costs of restoring the site to it's original condition including hazardous waste cleanup.

Upon termination or revocation of the authorization, delinquent fees and other charges associated with the authorization will be subject to all rights and remedies afforded the United States pursuant to 31 U.S.C. 3711 *et seq*. Delinquencies may be subject to any or all of the following conditions:

Administrative offset of payments due the holder from the Forest Service.

Delinquencies in excess of 60 days shall be referred to United States Department of Treasury for appropriate collection action as provided by 31 U.S.C. 3711 (g), (1).

The Secretary of the Treasury may offset an amount due the debtor for any delinquency as provided by 31 U.S.C. 3720, *et seq*.)

VII. OTHER PROVISIONS

A. <u>Members of Congress</u>. No Member of or Delegate to Congress or Resident Commissioner shall benefit from this permit either directly or indirectly, except when the authorized use provides a general benefit to a corporation.

B. <u>Appeals and Remedies</u>. Any discretionary decisions or determinations by the authorized officer are subject to the appeal regulations at 36 CFR 251, Subpart C, or revisions thereto.

C. <u>Superior Clauses</u>. In the event of any conflict between any of the preceding printed clauses or any provision thereof and any of the following clauses or any provision thereof, the preceding printed clauses shall control.

D . IMPROVEMENT RELOCATION (X33): This authorization is granted with the express understanding that should future location of United States Government-owned improvements or road rights-of-way require the relocation of the holder's improvements, such relocation will be done by, and at the expense of, the holder within a reasonable time as specified by the authorized officer.

E . WATER RIGHTS (X74): This authorization does not convey any legal interest in water rights as defined by applicable State law.

F. SUPERSEDED AUTHORIZATION (X18): This authorization supersedes a special-use authorization designated: Soper Wheeler, Dated 7/16/1969, 4051-01.

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0596-0082.

This information is needed by the Forest Service to evaluate requests to use National Forest System lands and manage those lands to protect natural resources, administer the use, and ensure public health and safety. This information is required to obtain or retain a benefit. The authority for that requirement is provided by the Organic Act of 1897 and the Federal Land Policy and Management Act of 1976, which authorize the Secretary of Agriculture to promulgate rules and regulations for authorizing and managing National Forest System lands. These statutes, along with the Term Permit Act, National Forest Ski Area Permit Act, Granger-Thye Act, Mineral Leasing Act, Alaska Term Permit Act, Act of September 3, 1954, Wilderness Act, National Forest Roads and Trails Act, Act of November 16, 1973, Archeological Resources Protection Act, and Alaska National Interest Lands Conservation Act, authorize the Secretary of Agriculture to issue authorizations for the use and occupancy of National Forest System lands. The Secretary of Agriculture's regulations at 36 CFR Part 251, Subpart B, establish procedures for issuing these authorizations.

The Privacy Act of 1974 (5 U.S.C. 552a) and the Freedom of Information Act (5 U.S.C. 552) govern the confidentiality to be provided for information received by the Forest Service. Public reporting burden for collection of information, <u>if requested</u>, is estimated to average 1 hour per response for annual financial information; average 1 hour per response to prepare or update operation and/or maintenance plan; average 1 hour per response for inspection reports; and an average of 1 hour for each request that may include such things as reports, logs, facility and user information, sublease information, and other similar miscellaneous information requests. This includes the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

This permit is accepted subject to the conditions set out above.

HOLDER NAME: Soper Wheeler

By: Raymond G. Wheeler
(Holder Signature)

(Holder Signature)

Date: 2/7/01

U.S. DEPARTMENT OF AGRICULTURE
Forest Service

By: Mark J. Madrid
MARK J. MADRID

Forest Supervisor
(Title)

Date: 2/09/01

# LOCATION MAP

Soper Wheeler Company (a)
Water Transmission Line
4051-01




Scale 1:15826

T. 26 N., R. 9 E., Section 4, MDM

Water Transmission Line ——
Private land

Prepared by Peggy Lutes 11/98

# LOCATION MAP

**SOPER WHEELER COMPANY (b)**
**Water Transmission Line**
**4051-01**




Scale 1:17065

T. 24N., R. 8 E., Section 15, MDM

Water Transmission Line

Private land

Prepared by Peggy Lutes 11/98

FOREST SERVICE
FIELD MAP SHEET

TIO SPECIAL USE PERMIT
EADOW VALLEY LUMBER CO.
PELINE (Case designation) Unit PLUMAS NATIONAL FOREST Greenville Ranger District

Scale ... inches = 1 mile
T. 2 R. 9E Sec. 4
Mag. Dec. 18E Acres




d work by G. Ingco Date 10-8-65 Plotted by G. Ingco
marks

MAP TO ACCOMPANY APPLICATION FOR PIPE LINE RIGHT-OF-WAY

MEADOW VALLEY LUMBER CO. ~ QUINCY, CALIF.

SCALE 4" = 1 MILE

Quincy R.D.

